**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                                                          )<br>                    vs.                              )<br>                                                          )<br>JONATHAN PINSON,                    )<br>                                                          )<br>                    Defendant.                  )<br>_____) | No. 3:12-cr-00974-DCN<br><br>**ORDER** |

This matter is before the court on a motion for preliminary order of forfeiture filed by the United States of America (the "government") in the instant criminal action. In light of the evidentiary record and for the reasons set forth below, the court grants the government's motion for preliminary order of forfeiture.[1]

## I.  BACKGROUND

On October 17, 2013, the government filed a fifty-two count superseding indictment against Eric Robinson ("Robinson") and Jonathan N. Pinson ("Pinson"), charging them with a variety of crimes including conspiracy to engage in racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), Hobbs Act violations, wire fraud, and others. The indictment contained a notice to Pinson that the government "will seek the forfeiture of property as part of any sentence in accordance with the applicable statute" and in compliance with Federal Rule of Criminal Procedure 32.2(a).

On July 3, 2014, a jury found Pinson guilty of: racketeering, in violation of 18 U.S.C. § 1962; theft concerning programs receiving federal funds, in violation of 18

---

[1] In its original motion for preliminary order of forfeiture, the government sought a money judgment of $414,943.00. Gov't.s Mot. 1. In its sur-reply to Pinson's opposition, the government reduced the amount to $352,843.02. Gov't's Reply 1  After the hearing held on March 11, 2015, the government again reduced the requested amount to $337,843.02.

1

U.S.C. § 666; conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343; mail fraud, in violation of 18 U.S.C. § 1342; wire fraud, in violation of 18 U.S.C. § 1343; money laundering, in violation of 18 U.S.C. §§ 1956 and 1957; and false statements to federal agencies, in violation of 18 U.S.C. § 1001.

On November 21, 2014, the government filed a motion for preliminary order of forfeiture pursuant to 21 U.S.C. § 853. Pinson filed a response in opposition on December 19, 2014. The government filed a reply on January 9, 2015. Upon Pinson's request and in compliance with Federal Rule of Criminal Procedure 32.2(b)(1)(B), the court conducted an evidentiary hearing on March 11, 2015. The court requested that each party submit a letter outlining their forfeiture arguments and tying the amounts to trial exhibits, trial testimony, and the evidence. Both parties submitted letters to the court on March 23, 2015. The motion is now ripe for the court's review.

## II.  STANDARD

Federal Rule of Criminal Procedure 32.2(b)(1)(A) states that "as soon as practical after a verdict or finding of guilty . . . the court must determine what property is subject to forfeiture under the applicable statute." "A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). The court must base its determination on evidence already in the record, and if the forfeiture is contested, the court must conduct a hearing after the verdict on either party's request. Fed. R. Crim. P. 32.2(b)(1)(B). If the court finds that the property is subject to forfeiture, the court must promptly enter a preliminary order of forfeiture setting forth the amount of any money

judgment. Fed. R. Crim. P. 32.2(b)(2)(A). "Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final." Id. at R. 32.2(b)(2)(B).

"A district court may order the forfeiture of (1) proceeds obtained as a result of the crime for which a defendant was convicted or (2) property used or intended to be used to commit or to facilitate the commission of the crime for which a defendant was convicted." United States v. Herder, 594 F.3d 352, 363–64 (4th Cir. 2010) (citing 21 U.S.C. § 853(a)). The government has the burden of proof and must establish that the property is subject to forfeiture by a preponderance of the evidence. Id. at 364. Section 21 U.S.C. § 853 "is not limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from those who acted in concert with him in furthering the criminal enterprise." United States v. McHan, 101 F.3d 1027, 1043 (4th Cir. 1996). "[W]here the proceeds of the offense are no longer traceable or available, a personal monetary judgment is appropriate." United States v. Jameel, 2014 WL 5317860, at *1 (E.D. Va. Oct. 16, 2014).

Under Rule 32.2(b)(1), the court is required to determine whether the government has "established the requisite nexus between the property and the offense." The Fourth Circuit utilizes the "substantial connection" standard under which "the government must establish that there was a substantial connection between the property to be forfeited and the offense." Herder, 594 F.3d at 364. The government must establish the requisite nexus by a preponderance of the evidence because forfeiture constitutes an aspect of the sentence imposed rather than a substantive element of an offense. United States v. Neal,

2003 WL 24307070, at *2 (E.D. Va. Sept. 29, 2003) (citing Libretti v. United States, 516 U.S. 29, 39 (1995); United States v. Tanner, 61 F.3d 231, 235 (4th Cir. 1995)).  The government "may rely on circumstantial evidence to meet this burden of proof."  United States v. Patel, 949 F. Supp. 2d 642, 648 (W.D. Va. 2013) (citing Herder, 594 F.3d at 364).  At sentencing, the court must make the order of forfeiture "part of the sentence and . . . include [] [it] in the judgment."  Fed. R. Crim. P. 32.2(b)(3).

### III.   DISCUSSION

The government seeks forfeiture pursuant to the following three statutory provisions:  (1) 18 U.S.C. § 1963(a)(1) for violation of 18 U.S.C. § 1962 (RICO); (2) 18 U.S.C. § 981(a) for violations of 18 U.S.C. § 666 (theft or bribery of federal program funds), 18 U.S.C. § 1951 (Hobbs Act), 18 U.S.C. §§ 1343 and 1341 (mail and wire fraud); and (3) 18 U.S.C. § 982(a)(1) for violations of 18 U.S.C. §§ 1956 and 1957 (money laundering).

Title 18 U.S.C. § 1963 is the forfeiture statute that applies to RICO violations.  The statute states that "[w]hoever violates any provision of section 1963 of this chapter . . . shall forfeit to the United States . . . any interest the person has acquired or maintained in violation of section 1962, any interest in, security of, claim against, or property or contractual right, as well as any proceeds which the person obtained, directly or indirectly, from racketeering activity."  18 U.S.C. § 1963(a).  "As the Fourth Circuit has observed, the RICO statute contains what is 'by far the most far reaching forfeiture provision, sweeping far more broadly than the substantive RICO offense itself.'"  United States v. Rosga, 864 F. Supp. 2d 439, 442–43 (E.D. Va. 2012) (quoting United States v. Cherry, 330 F.3d 658, 669 n.18 (4th Cir. 2003)).

Title 18 U.S.C. § 981(a) is an umbrella forfeiture statute that generally applies to civil forfeitures. However, 28 U.S.C. § 2461(c) provides:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in . . . 21 U.S.C. [§] 853[ ] apply to all stages of a criminal forfeiture proceeding . . . .

Thus, § 2461 acts to bridge the gap between civil and criminal forfeiture, authorizing "criminal forfeiture when no criminal forfeiture provision applies to the crime charged against a particular defendant but civil forfeiture for that charged crime is nonetheless authorized." United States v. Vampire Nation, 451 F.3d 189, 199 (3d Cir. 2006). "Notably, § 2461(c) (in conjunction with § 981) provides that the district court 'shall order' forfeiture in the amount of the criminal proceeds." United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014) (emphasis added). Therefore, the plain text of the statute mandates forfeiture. Id.; see also United States v. Monsanto, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied.").

Title 18 U.S.C. § 982 is the criminal forfeiture statute and provides that "[t]he court, in imposing sentence on a person convicted of [money laundering], shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1) (emphasis added). Section 982 has the same mandatory language found in § 981.

In its motion for preliminary order of forfeiture, the government seeks a money judgment of $337,843.02.[2]  Gov't's Reply 1.  Specifically, the government seeks $103,110.68 relating to the Marion County Diaper Plant and $234,732.34 relating to the Village at River's Edge development.  Pinson objects to the government's motion for a preliminary order of forfeiture for various reasons.  Def.'s Resp. 1–2.  Pinson argues that the maximum amount he should be ordered to forfeit is $74,100.00.[3]  Id. at 1.

### A. Net Proceeds vs. Gross Receipts

As an initial matter, Pinson argues, pursuant to United States v. Santos, 553 U.S. 507, 511–14 (2008), that the proper measure of "proceeds" as defined under 18 U.S.C. § 1956 and interpreted by the courts, is the net proceeds and not gross receipts.  In response, the government argues that Santos does not apply because Congress amended the money laundering statute in May of 2009, effectively superseding Santos.

In Santos, the Supreme Court found that the term "proceeds" as defined in the money laundering statute, can mean profits or receipts.  Id. at 511.  Nonetheless, the court found that the term was "inherently ambiguous" and that "the rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  Id. at 513–14.  The following year, Congress amended the money laundering statute.  18 U.S.C. § 1956(c)(9).  The statute now states that "[t]he term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  Id.  As such, the holding in Santos has been superseded by the amended statute.  Thus, it is clear that

---

[2] Pinson argues in his response that the government seeks $850,000.00, presumably based on the original indictment, in which the government actually sought a money judgment of $414,943.00. Mot. 1.
[3] During the evidentiary hearing, Pinson argued that he was only subject to a forfeiture award of $108,600.00. However, in a letter submitted to the court after the hearing, Pinson now argues that he is only subject to a money judgment of $74,100.00.

6

proceeds, as defined in the money laundering statute now explicitly comprise gross receipts.

Further, Pinson is subject to forfeiture under the general criminal forfeiture statute, the RICO forfeiture statute <u>and</u> the money laundering statute.  The Fourth Circuit has found that proceeds, as defined under the RICO statute and the criminal forfeiture statute, refers to the gross proceeds and not the net profits of a continuing criminal enterprise.  <u>See</u> <u>McHan</u>, 101 F.3d at 1042 (finding § 853 parallel to the criminal forfeiture provision of the RICO statute and citing its legislative history which "reveals that Congress believed '[i]t should not be necessary for the prosecutor to prove what the defendant's overhead expenses were' and, therefore, used the term 'proceeds' rather than 'profits' in the RICO forfeiture statute 'to alleviate the unreasonable burden on the government of proving net profits.'" (quoting S. Rep. No. 225, 98th Cong., 2d Sess., at 199 (1984), U.S. Code Cong. & Admin. News 1984, at 3382)).  Lastly, the forfeiture of gross proceeds is supported by sound policy considerations because "[t]he proper measure of criminal responsibility generally is the harm that the defendant caused, not the net gain that he realized from his conduct."  <u>McHan</u>, 101 F.3d at 1042 ("Were we to read proceeds in § 853 to mean only profits, moreover, we would create perverse incentives for criminals to employ complicated accounting measures to shelter the profits of their illegal enterprises.").

### B. Diaper Plant

The government seeks $41,010.68 from the PDM Management Invoice and $62,100.00 from the Noel Group Invoice in relation to Pinson's involvement in the diaper plant.[4]

#### i. PDM Management

The government first seeks $41,010.68 from an invoice submitted on behalf of PDM Management to Marion County. Pinson objects, arguing that he only received $12,000 from a check made payable to the Noel Group out of the $41,010.68 invoice. Thus, Pinson argues that the government is only entitled to $12,000.

In support of the money judgment, the government cites the December 3, 2009 invoice submitted to Marion County, a copy of the check Phil Mims ("Mims") received from Marion County on behalf of PDM Management, and Mims's testimony. See Trial Ex. 20; Mims's Testimony at 400–06. Pinson argues that the government failed to provide evidence that PDM Management would not have been entitled to the remaining $29,010.68 of the invoice because although Mims testified that the invoice was inflated, he does not testify that it was inflated more than the $12,000 paid to the Noel Group.

Pinson argues that the government only proved that he received $12,000 from the PDM Management invoice and could not prove that the remaining money was not legitimately earned by PDM Management. The Fourth Circuit has held that the preponderance standard, not the reasonable doubt standard, governs forfeiture under § 982(a)(1). Cherry, 330 F.3d at 669. Although the Fourth Circuit has not explicitly

---

[4] The government originally sought $15,000 from a payment made to Lance Wright and Tony Williams submitted by Marion County. However, the government later determined that the $15,000 check was drawn from the $41,010.68 invoice. Although Pinson objects to the additional $15,000, the government no longer includes the amount in its forfeiture calculations to avoid double counting.

8

decided the standard of proof applicable to a forfeiture determination under § 1963, the Fourth Circuit has recognized that other circuits have suggested that the preponderance standard may apply. Cherry, 330 F.3d at 669, n.18 ("While we have not decided the standard of proof applicable to forfeiture determination under § 1963, other circuits have suggested that the preponderance standard may apply." (citing United States v. Houlihan, 92 F.3d 1271, 1299 n. 33 (1st Cir. 1996))). Thus, the government must prove the requisite nexus between the money sought and the crime charged by a preponderance of the evidence. Herder, 594 F.3d at 364. Courts within and outside of the Fourth Circuit, including the First, Second, Third, and Seventh Circuits, have applied the "but for" test to determine whether the government has established the requisite nexus. See, e.g., United States v. DeFries, 129 F.3d 1293, 1313 (D.C. Cir. 1997); United States v. Angiulo, 897 F.2d 1169, 1213 (1st Cir. 1990); United States v. Ofchinick, 883 F.2d 1172, 1183 (3d Cir. 1989); United States v. Porcelli, 865 F.2d 1352, 1365 (2d Cir. 1989); United States v. Horak, 833 F.2d 1235, 1242–43 (7th Cir. 1987); United States v. Farkas, 2011 WL 5101752, at *3 (E.D. Va. Oct. 26, 2011); United States v. Benyo, 384 F. Supp. 2d 909, 914 (E.D. Va. 2005); United States v. Ivanchukov, 405 F. Supp. 2d 708 (E.D. Va. 2005). Under the "but for" test, property is subject to forfeiture if the defendant would not have received it but for his illegal activities. Farkas, 2011 WL 5101752 at *3.

Further, section 853 "is not limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from those who acted in concert with him in furthering the criminal enterprise." McHan, 101 F.3d at 1043 (internal quotations omitted). "Just as conspirators are substantively liable for the foreseeable criminal conduct of a conspiracy's other members, they are responsible at

9

sentencing for co-conspirators' reasonably foreseeable acts and omissions . . . in furtherance of the jointly undertaken criminal activity." Id. "[I]n cases involving the RICO forfeiture statute, courts have unanimously concluded that conspirators are jointly and severally liable for amounts received pursuant to their illicit agreement." Id.

Mims testified that he submitted the invoice to Marion County on behalf of PDM Management. Mims's Testimony 405. Moreover, Mims testified that the check was paid for approximately one month's work, that the invoice was inflated, and that the most he should have received for that time period was $5,000. Id. at 403–04. After receiving the check from Marion County, Mims testified that he issued a check to the Noel Group (Pinson) for "consulting services" that Pinson did not perform. Id. at 406. Although Mims does not specify exactly how much the invoice was inflated, the government has established by a preponderance of the evidence that but for the illegal agreement, Mims would not have submitted the invoice to Marion County in the first place. Title 18 U.S.C. § 982(a)(1) states that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." (emphasis added). Lastly, as outlined above, the gross proceeds of a criminal enterprise are subject to forfeiture because '[t]he purpose of forfeiture is to remove property facilitating crime or property produced by crime—all of which is tainted by the illegal activity." McHan, 101 F.3d at 1042 (4th Cir. 1996).

Therefore, Pinson must forfeiture the entire $41,010.68.

### ii.     Noel Group Invoice

The government next seeks $62,100 traceable to an invoice submitted by Mims to Marion County for "engineering services" upon Pinson's request. Gov. Letter 2. In support of the amount, the government cites Mims's testimony and the invoice submitted to Marion County. See Trial Exhibit 28; Mims's Testimony 408–09. Pinson "concedes that if the jury's verdict is upheld the Government is entitled to a forfeiture judgment of $62,100." ECF 215 at 3.

Therefore, Pinson must forfeit $62,100.

### C. Village at River's Edge

The government next seeks a money judgment of $234,732.24 traceable to Pinson's criminal conduct relating to the Village at River's Edge ("VRE") development. Pinson objects, arguing that the forfeiture amount should be reduced by the developer fees never paid to Pinson under the contract.

During the trial, forensic analyst Bud Wilson testified that of the $3,883,357.59 that went into VRE's account from the Columbia Housing Authority ("CHA"), $234,732.34 had been misused. Gov't Trial Ex. 184 at 11. Pursuant to the terms of the contract between VRE and CHA, VRE was to receive a developer's fee totaling 6.7% of the construction costs, to be paid in three separate installments. Gov't's Trial Ex. 102 at 11. The first installment of $94,809.15 was paid to VRE on October 11, 2010. See Gov't's Letter Ex. A. The second installment of $133,574.66 was paid to VRE on September 12, 2011. See Gov't's Trial Ex. 184 at 8. The last installment of $153,257.19 was never paid to VRE.[5] See Gov't's Trial Ex. 102 at 11.

---

[5] Pinson argues that VRE only received $133,574.66 from the CHA for the developer's fees and is therefore still entitled to $245,661.95 under the contract. However, the government submitted an email

11

Pinson argues that the amount remaining under the terms of the contract should be used to offset the forfeiture award.[6] However, as outlined above, the government is entitled to the gross proceeds of the criminal enterprise and not just the net profits. The government has established by a preponderance of the evidence the requisite nexus between the misused CHA funds and Pinson's RICO violation.

Further, to the extent Pinson is entitled to the remaining balance of the developer fees, the amount is itself subject to forfeiture under the RICO statute. Under 18 U.S.C. § 1963(a)(2)(D), whoever violates § 1962 shall forfeit any "property or contractual right of any kind affording a source of influence . . . over any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962." In the indictment, the government gave Pinson notice that upon conviction, he shall forfeit "[a]ny . . . contractual rights of any kind affording a source of influence over the enterprise." ECF No. 57 at 65. Pinson's rights as principal of VRE under the contract between VRE and the CHA were a source of influence over the

---

from Jethro Currie, director of capital improvements at the CHA, which states that $94,809.15 was wired to VRE on October 11, 2010 after the invoice was received on October 6, 2010. Gov't's Letter Ex. A. Pinson has failed to provide any evidence to the contrary. Therefore, the government has established by a preponderance of the evidence that VRE also received the first installment of $94,809.15 as a developer's fee.

[6] There is some dispute as to the actual amount remaining in the CHA's account. Timothy Kalliainen ("Kalliainen"), president of SK Builder's Inc., sent the executive director of the CHA, Gilbert Walker ("Walker"), a letter requesting the remaining balance of the developer's fee in an effort to offset its losses. Gov't's Letter Ex. C. In response, Walker sent a letter stating that it is the CHA's position that VRE breached the contract and is therefore not entitled to the remaining balance of the developer fee. Gov't's Letter Ex. D. Further, as of October 10, 2014, Walker stated that the "undisputed developer's fee balance is approximately $23,000." Id. The CHA later found an error in their calculations, stating that $94,000 of the $153,257.19 unpaid developers fee was used to offset the amount owed to the lighting supplier, Quantas Lighting. Gov't's Letter Ex. A & B. Thus, there is only $59,257.19 remaining from the unpaid developer's fee. Id.

criminal enterprise outlined in Count 1 of the indictment, thereby rendering them forfeitable under 18 U.S.C. § 1963.[7]

Therefore, the misused funds relating to the VRE development project should not be offset for the remaining amount of the developer's fee. Pinson must forfeit the entire $234,732.34.

### D. Excessive Fine under the Eighth Amendment

To the extent that Pinson still contends that the forfeiture sought is excessive, the court finds that the award does not violate the excessive fines clause of the Eighth Amendment. In his response to the motion for preliminary order of forfeiture, Pinson first argued that the government was seeking an amount in excess of $850,000 and that the figure is "grossly excessive and thus improper" under the Eighth Amendment. Def.'s Resp. 1. The government argues that because the forfeiture of the proceeds of an offense can never be considered disproportional, the forfeiture of property traceable to the proceeds of the offense cannot be unconstitutional, even if the property appreciates in value. Reply at 1–2. The government actually seeks $337,843.02, not $850,000.00. Id. at 1. Thus, the court will analyze whether the requested amount of $337,843.02 is excessive.

The Eighth Amendment "bars the government from collecting excessive fines as punishment for an offense." United States v. Blackman, 746 F.3d 137, 144 (4th Cir. 2014). The Supreme Court has stated that "[i]f the amount of the forfeiture is grossly

---

[7] Moreover, at trial, Kalliainen testified that SK Builders was still owed $266,000 under its contract with VRE. Kalliainen Testimony 37. The government asserts that Pinson assigned his right to the developer's fee to SK Builders. See Gov't's Letter Ex. C. In support of its assertion, the government provided a letter from Kalliainen to Walker that stated "SK has documented its losses to HUD and provided HUD with the signed contract documents showing that Mr. Pinson assigned his right to the developer's fee to SK Builders." Id. There is no evidence to dispute the asserted assignments of Pinson's rights under the contract.

disproportional to the gravity of the defendant's offense, it is unconstitutional" under the Excessive Fines Clause. United States v. Bajakajian, 524 U.S. 321, 337 (1998). The Fourth Circuit "has distilled this standard to four factors: (1) 'the amount of the forfeiture and its relationship to the authorized penalty;' (2) 'the nature and extent of the criminal activity;' (3) 'the relationship between the crime charged and other crimes;' and (4) 'the harm caused by the charged crime.'" Blackman, 746 F.3d at 144 (quoting United States v. Jalaram, 599 F.3d 347, 355–56 (4th Cir. 2010)). "[O]nly in rare situations will an in personam criminal forfeiture pursuant to 21 U.S.C. § 853(a)(2) be excessive in a constitutional sense." United States v. Wild, 47 F.3d 669, 676 (4th Cir. 1995). "Because questions of proportionality are reserved primarily to the legislature, the Bajakajian test is highly deferential." Blackman, 746 F.3d at 144 (citing United States ex rel. Bunk v. Gosselin World Wide Moving, N.V., 741 F.3d 390, 397 (4th Cir. 2013)).

      Failing to cite a single case from within the Fourth Circuit, the government argues that "[t]he courts have been unanimous in holding that the forfeiture of the proceeds of the offense can never be considered disproportional." Gov't's Reply 2. In United States v. Wild, the Fourth Circuit stated that "[a]n excessiveness challenge can never be mounted against an in personam criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1) because the forfeiture of property constituting, or derived from, proceeds of an illegal activity can never be 'excessive' in a constitutional sense." 47 F.3d at 676. However, the Fourth Circuit made the aforementioned statement only in dicta and recently clarified the rule. United States v. Jalaram, Inc., 599 F.3d 347, 352 (4th Cir. 2010) ("We have addressed this subject only in dicta or unpublished opinions. And even in these nonbinding utterances, we have come to conflicting conclusions."). Contrary to the

government's assertions, "the forfeiture of criminal proceeds does indeed constitute punishment to which the Excessive Fines Clause applies." Id. "The Supreme Court's Excessive Fines Clause cases thus require us to reject the . . . argument that forfeiture of a particular type of property—here the proceeds of a criminal conspiracy—is, by definition, nonpunitive. Instead, we look to whether the challenged forfeiture resulted at least in part from the criminal activity of the property owner." Id. at 354. Therefore, the court must determine whether the challenged forfeiture amount is grossly disproportional to the gravity of Pinson's offense by applying the four factors outlined above. See Bajakajian, 524 U.S. at 324.

The government seeks a forfeiture amount of $337,843.02. The guideline range of penalties for Pinson's offense is from $17,500 to $10,000,000. See U.S.S.G. § 5E1.2(c)(3). In just 10 of the 29 counts of Pinson's conviction, Counts 12, 18, and 27-34, he is facing $10,000,000 in maximum statutory fines pursuant to 18 U.S.C. §§ 1343 and 3571(b). Thus, the forfeiture award is within the penalty guidelines and well below the authorized maximum penalty. Pinson was convicted of 29 counts relating to his role in a RICO conspiracy that involved multiple organized schemes to profit from government grants. Pinson's criminal activity, including serious offenses of mail and wire fraud and money laundering, occurred over a period of years. Pinson was one of the primary leaders of the criminal enterprise, which had a detrimental impact on the public. Therefore, the forfeiture amount does not violate the Eighth Amendment.

### E. Substitute Assets

Lastly, Pinson argues that the government has not established that it is entitled to substitute assets. Def.'s Resp. 5. The government responds that it would be premature to

15

present evidence for forfeiture of substitute assets prior to the court entering a preliminary order of forfeiture. Gov't's Reply 8–9. The government argues that when the court enters a preliminary order of forfeiture, the government can then move to forfeit substitute assets to satisfy the personal money judgment. Id. at 9.

Title 21 U.S.C. § 853(p) states that "if any property described in subsection (a) of this section, as a result of any act or omission of the defendant— (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty . . . the court shall order the forfeiture of any other property of the defendant, up to the value" of the property subject to forfeiture. The language of § 853(p) is "not discretionary; the statute mandates forfeiture of substitute assets when the tainted property has been placed beyond the reach of a forfeiture." United States v. Alamoudi, 452 F.3d 310, 314 (4th Cir. 2006) (internal quotation marks omitted). "Because criminal forfeiture is remedial in nature, § 853 explicitly states that its provisions 'shall be liberally construed' in order to effectuate this purpose." United States v. Patel, 949 F. Supp. 2d 642, 649 (W.D. Va. 2013) (citing 21 U.S.C. § 853(o)). In the indictment, the government stated its intention to seek forfeiture of any other of Pinson's property up to the value of the forfeitable property.

At this stage in the proceedings, it is premature to address whether Pinson must forfeit substitute assets. See Alamoudi, 452 F.3d at 314 (4th Cir. 2006) ("[W]hen the Government cannot reach the property initially subject to forfeiture, federal law requires a court to substitute assets for the unavailable tainted property.") (emphasis added).

16

Thus, until the court enters a preliminary order of forfeiture, the government cannot determine whether the provisions of § 853(p) apply.[8]

### IV.  CONCLUSION

For the reasons set forth above, the government's motion for preliminary order of forfeiture is **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 9, 2015**
**Charleston, South Carolina**

---

[8] In his original opposition to the motion for preliminary order of forfeiture, Pinson argued that the government is not entitled to forfeiture from Count 1 because the jury returned the conviction on a general verdict form so it is unclear on what overt acts charged in the superseding indictment the jury premised its verdict. Def.'s Resp. 2. To the extent Pinson maintains this argument, it fails. Under Rule 32.2(b)(5)(B), "[i]f a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." However, a defendant may waive their right for a jury to determine the forfeiture amount by a special verdict. See United States v. Zang, 703 F.2d 1186, 1194–1195 (10th Cir. 1982) ("[T]he parties can waive their right to a special verdict [under Rule 31(e)] by not making a timely request."); United States v. Davis, 177 F. Supp. 2d 470, 483 (E.D. Va. 2001) ("[A] party who stands silent while the jury is dismissed following publication of the guilty verdict, as occurred here, waives the right to a jury determination of forfeiture under Rule 32.2(b)(4)." (citing United States v. Ham, 58 F.3d 78 (4th Cir. 1995))). There is no indication that Pinson requested a special verdict form or for the jury to determine the appropriate amount of forfeiture. Thus, Pinson waived his right for the jury to determine forfeiture.

17