IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 3:12-cr-00974-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| JONATHAN PINSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the resentencing of defendant Jonathan Pinson ("Pinson"). For the following reasons, the court sentences Pinson to a term of imprisonment of 48 months.

## I. BACKGROUND

In July 2014, after a jury trial Pinson was convicted on charges of racketeering and numerous other crimes related to his involvement in various schemes to defraud. Specifically, Pinson was convicted of conspiracy to participate in a racketeering enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), government program theft, honest services fraud, mail and wire fraud, money laundering, and making false statements to federal agencies. On May 20, 2015, this court determined that Pinson's offense level under the Sentencing Guidelines was 34 and that Pinson faced an advisory Guidelines range of 151 to 188 months. The court applied a variance based on the 3553(a) factors and sentenced Pinson to 60 months imprisonment. On appeal, the Fourth Circuit overturned Pinson's convictions for RICO conspiracy and government program theft and remanded for resentencing. This matter is before the court Pinson's resentencing.

## II. DISCUSSION

Pinson raises four separate issues on resentencing: (1) a prison sentence would lead to an unwarranted disparity between Pinson and his codefendants; (2) the Sentencing Guidelines have been amended since Pinson was first sentenced, and the court should apply a proportionate variance to the amended Sentencing Guidelines; (3) the PSR's calculation of the base offense level, specifically the four-level enhancement for a leadership role in a conspiracy involving five or more participants is contrary to the Fourth Circuit's ruling in United States v. Pinson, 860 F.3d 152 (4th Cir. 2017); and (4) Pinson has not had any violations of his bond in the five years that he has been under the supervision of the probation office. The court assesses each argument in turn.

### A. Disparity in Sentencing between codefendants

Pinson first argues that the court should consider the sentences imposed against the other individuals involved in this matter. Certainly, in fashioning an appropriate sentence, judges are directed by statute to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But as courts have observed, this provision is "primarily aimed at national disparities, rather than those between co-defendants." United States v. Rivera–Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010). Pinson has presented no evidence that similarly-situated defendants on a national scale have received a sentence of probation or restitution.

The court considered the sentences of his codefendants, which are admittedly lax in comparison to the incarceration that awaits Pinson. But even if Pinson's sentence is substantially longer than the sentences imposed on his codefendants, the record indicates

that Pinson was more involved in more conspiracies than his codefendants. Furthermore, those other defendants cooperated with the government in its prosecution of Pinson. Namely, all of his codefendants admitted responsibility to criminal acts far fewer than the twenty-five counts that a jury convicted Pinson of.[1] Therefore, there is not a compelling argument that the disparity in sentences was unwarranted. See United States v. Shabani, 48 F.3d 401, 404 (9th Cir. 1995) (concluding that sentence disparity resulting from cooperation with the government is not unwarranted). Courts have previously held that "[w]hile similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record." United States v. Goddard, 929 F.2d 546, 550 (10th Cir. 1991) (disparate sentences were warranted, due in part to the level of active involvement of each of the defendants). In this case, there is no evidence of similarity in the participation, culpability, criminality, and conduct of Pinson and each of his codefendants. Under the Sentencing Guidelines, the policy statements, and the official commentary of the Sentencing Commission, the only disparities which are to be avoided are <u>unwarranted</u> disparities. Here, the disparity in sentences is clearly explicable by the facts on the record. Goddard, 929 F.2d at 550.

### B. Effect of Amended Sentencing Guidelines

Next, Pinson contends that the court should apply a proportionate variance to the amended sentencing guidelines. The court agrees. Since Pinson's first sentencing, the Sentencing Guidelines have been amended. The guidelines calculation in the most current PSR is 121–151 months, whereas the guidelines calculation in the first PSR was

---

[1] Pinson's codefendant during trial, Eric Robinson, was acquitted by the jury.

151–188 months. Since the court varied downward proportionally from the bottom of the guidelines range in the first sentencing, it also varies downward from the bottom of this new amended guidelines range.

>  C.  **Effect of Fourth Circuit Ruling on Role Enhancement under Section 3B1.1**

Pinson argues the PSR clearly erred in applying a four-level "leadership role" adjustment pursuant to U.S.S.G. § 3B1.1(a). In Pinson's view, no evidence or findings of fact support the conclusion that he organized, led, managed, or supervised five or more participants who engaged in criminal activities. The court disagrees.

The four-level enhancement is applicable for the South Carolina State University-related conspiracy ("SCSU conspiracy"), which involved both the homecoming concert and the purchase of the Sportsman's Retreat. There is no real question that the SCSU conspiracy encompasses both the homecoming concert and the Sportsman's Retreat, as the Fourth Circuit itself held that "the evidence here shows two separate conspiracies . . . another involving the homecoming concert and Sportsman's Retreat." Pinson, 860 F.3d at 162. There are at least five participants in the SCSU conspiracy. Based on the trial testimony, the court makes the following findings by a preponderance of the evidence: Richard Zahn owned the Sportsman's Retreat, and arranged for Pinson to receive a Porsche Cayenne as a reward for his role in SCSU's acquisition of the Sportsman's Retreat. In turn, Pinson arranged for SCSU to buy the Sportsman's retreat in exchange for the Porsche. Michael Bartley, Chief of Police at SCSU, knew both Pinson and Zahn, and helped promote the SCSU acquisition of the Sportsman's Retreat in exchange for a commission of $30,000 in cash. Edwin Givens was an attorney for SCSU who received a kickback in his role in arranging for the homecoming concert, as Pinson promised him

4

funds from arranging the concert promoter contract in return for helping facilitate the transaction and the signing of Robinson's company, W.E. Entertainment. Eric Robinson transferred $500 to Pinson's account as part of their agreement to share any concert profits from the SCSU homecoming concert.[2] Tellingly, Pinson does not argue in his objections to the PSR or in his motion that there are not five or more participants in the SCSU conspiracy.

In evaluating a defendant's role in the overall criminal enterprise, sentencing courts are to consider, among other things, "the exercise of decision making authority, the nature of participation in the commission of the offense, . . . the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." See § 3B1.1, comment. (n.4). A review of the record makes clear that Pinson was up to his neck in criminal involvement, at least as it relates to the SCSU conspiracy. He certainly exercised enough decision making authority for the court to find that he was "an organizer or leader of a criminal activity" under U.S.S.G., § 3B1.1.

Having established that the SCSU-related conspiracy had both more than five participants and that Pinson was an organizer or leader of the criminal activity, the court finds that the application of the four-level enhancement in 3B1.1(a) is appropriate.

---

[2] One of the participants in the SCSU conspiracy is Eric Robinson, who was acquitted by the jury on all charges. However, sentencing courts have the power to consider the broad context of a defendant's conduct, even when the court's view conflicts with a jury verdict. See United States v. Watts, 519 U.S. 148, 152 (1997) (holding that Double Jeopardy Clause did not bar consideration of acquitted conduct in sentencing). In Watts, the Supreme Court held "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as the conduct has been proved by a preponderance of the evidence." Id.

### D. Post-Sentencing Rehabilitation

Finally, Pinson appears to argue that the court should impose a sentence of probation or time served because he has been under the supervision of the probation office for more than five years as a condition of his bond and has had no violations. However, Pinson cites no caselaw that would allow this court to consider good behavior while on bond as an independent ground for applying a Guidelines adjustment or a variance. While it is laudable that Pinson has not engaged in new criminal activity, it does not factor into the court's assessment of what sentence he should face as punishment for the criminal activity of which he was already convicted.

The court closes by noting with some alarm that during his resentencing hearing, Pinson stated that "I'm not a criminal." ECF No. 287, Resentencing Hearing Transcript at 19:5. This clearly indicates that Pinson has yet to take responsibility for his actions, and reiterates that Pinson "may not be a criminal now, he was a criminal then." Id. 20:24–21:1. The court also incorporates its reasoning in the first sentencing in this matter. ECF No. 242, Sentencing Hearing Transcript at 701:1–76:10. It has carefully considered all of the 3553(a) factors, and imposes a sentence of incarceration of 48 months. This sentence is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. United States v. Booker, 543 U.S. 220, 268 (2005) (internal citations and quotations omitted).

## III. CONCLUSION

For the foregoing reasons, the court imposes a sentence of 48 months.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**January 31, 2018
Charleston, South Carolina**